## KOCH v. DIAMOND BRAIDING MILLS, Inc., et al.
### No. 53754.

Circuit Court, Pinellas County.

February 2 and 6, 1961.

J. C. Davant, Tarpon Springs, for plaintiff.

Norman Stallings, Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for defendant Diamond Braiding Mills, Inc.

Nick E. Stamathis, Tarpon Springs, for defendant Tarpon Springs Chamber of Commerce.

JACK F. WHITE, Circuit Judge.

*Opinion:* The issues of this case have been ably presented and argued on behalf of the respective parties. I have concluded, upon consideration, that some relief must be granted because of a wilful and damaging transgression of limitations imposed by law upon the City of Tarpon Springs as a municipal corporation. This conclusion does not necessarily imply criticism of the ultimate objectives of the parties. As a matter of fact, a widespread conviction of the validity of such objectives was probably a decisive factor in the adoption of the unfortunate plan which finally resulted in the institution of this suit.

The case had its beginnings more than a decade ago when many leading citizens of Tarpon Springs were searching for ways and means of bolstering the lagging economy of that community. Prominent business men, city officials and members of the chamber of commerce were willing to offer inducements to acceptable industrial enterprises to locate in the area. The defendant Diamond Braiding Mills, Inc., sought and received certain inducements and, partly as a result thereof, removed its plant from Illinois to Tarpon Springs where it has since operated as an apparently successful manufacturing establishment.

The officials of the city and the chamber of commerce and representatives of Diamond Braiding Mills collaborated in the project of removing the plant to Tarpon Springs. The parties committed themselves to a plan by which, among other things, Diamond Braiding Mills would be relieved from the payment of ad valorem taxes for a period of ten years. The parties were aware from the outset that it was unlawful for the city to pay or underwrite the taxes of a private business. They nevertheless agreed, in effect, that the city should provide a way to evade the legal prohibition by furnishing the necessary funds to the chamber of commerce which, in turn, would pay the taxes. This plan of payment has been carried out with the exception of the last year's taxes (1959), payment of which has been enjoined.

This suit not only challenges the validity of the tax-payment plan aforesaid but also, in view of the participation of Diamond Braiding Mills, seeks to recover from that defendant on behalf of the city the payments heretofore made and to prohibit and enjoin any further payment. The suit is grounded upon section 10 of article XIV of the Florida constitution which prohibits any

county, city or incorporated district from appropriating money for, or lending its credit to, any corporation, association, institution or individual.

The described plan called for a fundamentally illegal tax subsidy and the evidence impels the conclusion that it has been carried out substantially according to plan. The crucial question now presented is whether or not the law affords a remedy to correct the error. It is not a simple question.

The defendants have relied *inter alia* upon the defense of laches or unreasonable delay in bringing the suit. On this point I hold that inasmuch as the parties understood the implications of their transaction, the defense of laches does not apply. The parties took their chances that no complaint would ever be made. Diamond Braiding Mills, having knowledge of the legal inhibition, could not have been misled into acting innocently to its detriment. This is the essence of the defense of laches where, as here, there are no substantial intervening equities.

It is further argued by way of defense that the defendants are entitled to a presumption that the Diamond Braiding Mills taxes were paid by the chamber of commerce with funds derived from membership fees rather than tax funds remitted by the city to the chamber of commerce, there being no express prohibition of law against the chamber of commerce paying the taxes of private interests. This argument is ingenious and plausible but untenable. The remittance of funds by the city to the chamber of commerce was purposely geared to the requirements of the tax-payment plan. City funds were so remitted and it is immaterial that they were commingled with generally smaller membership funds before being paid out for the taxes in question.

Court decisions generally sustain the proposition that money paid by a municipality on an illegal or ultra vires agreement ordinarily can be recovered. See 17 McQuillan Municipal Corporations (3rd Ed.) Sec. 49.42 and citations wherein it is generally held that an action to recover money paid by a city pursuant to an illegal plan or scheme is maintainable by the city in its own behalf or by a taxpayer on behalf of himself and others similarly situated. City of Kiel v. Frank Shoe Mfg. Co. (Wis.), 4 N.W. 2d 117. See also Armstrong v. Richards (Fla.), 175 So. 340.

However worthy the intent of the parties to promote the well-being of Tarpon Springs by inducing a new industry to locate there, such good intentions cannot obscure the fact that the whole

tendency and character of the plan was to induce the officers of the city to act, through indirection, contrary to fundamental law and against public policy with the knowledge and concurrence of the parties receiving the benefits. If such scheme were upheld it would tend to encourage similar action in other cities. It would be impossible to predict all the vicious results that would flow from judicial approval of a plan so permeated with illegality.

The advent of Diamond Braiding Mills to Tarpon Springs has no doubt benefited that community and the surrounding area. If by personal commitments the interested citizens of Tarpon Springs, rather than *the City of Tarpon Springs, a municipal corporation*, had undertaken a similar plan in behalf of Diamond Braiding Mills, this case would not have arisen. A tangled web was begun when first the parties undertook to evade the constitution.

A final decree will be entered providing for recovery from the defendant, Diamond Braiding Mills, Inc., of the principal amount of taxes paid but without interest except, of course, from the date of entry of judgment. The injunction against the payment of the final year's taxes will be made permanent. Plaintiff's bond will be released and the surety thereon discharged, and all proper costs assessed and adjudged against said defendant.

*Final decree:* Having heard and considered the testimony adduced before the court and the arguments of counsel, the court has determined that the equities are with the plaintiff and that he is entitled to recover, and it is therefore ordered, adjudged and decreed —

That the temporary injunction heretofore entered by the court on December 9, 1959 is made permanent, and the Tarpon Springs Chamber of Commerce is perpetually restrained and enjoined from paying the taxes of the defendant Diamond Braiding Mills, Inc.

That the injunction bond provided by the plaintiff is canceled, and the plaintiff and the surety thereon are discharged of any responsibility or liability by reason thereof.

That the plaintiff, C. E. Koch, suing for and on behalf of the City of Tarpon Springs, a municipal corporation, do have and recover from Diamond Braiding Mills, Inc. the sum of $8,851.56, together with the costs of this suit, to be taxed by the clerk of the court, for which let execution issue.